VERONICA A. SZYCHOSKI, appellant,

*v.*

ANTHONY F. SZYCHOSKI, respondent.

[Submitted May 28th, 1948.   Decided September 3d, 1948.]

On appeal from a decree of the Court of Chancery advised by Vice-Chancellor Woodruff, who filed the following opinion:

"A single issue is presented for determination—the ownership of moneys in a bank account.

"The parties are wife and husband.   They were married January 14th, 1940, and established their home in the City of Burlington, Burlington County.   At the time of their marriage, complainant was employed as a clerk in a motor vehicle license and insurance office in the City of Camden, and defendant as a service or repair man for the Public Service Gas Company at Burlington.   Complainant alleges that in addition to her fixed salary she regularly received substantial sums as tips or gratuities.   With these gratuities, she maintains, she purchased all of her own clothing, a monthly commutation ticket, her lunches, and paid most of her other personal expenses.   She alleges that all of her regular salary

was turned over to her husband each week, to be by him deposited for her in a joint bank account in a Burlington city bank.

"The parties separated early in May, 1946, and lived apart until the following July. Complainant then returned and lived with her husband for two weeks. She then again separated herself from her husband, and the parties have since lived apart.

"May 8th, 1935, five years before his marriage, the defendant opened a savings account at Mechanics National Bank of Burlington. June 11th, 1941, he caused his wife's name to be added to that account. The account thereafter read 'Anthony Szychoski or Verna Szychoski.' The balance in the account June 11th, 1941, was $340.48. On May 31st, 1946, the defendant closed out the account by withdrawing the amount then on deposit, $4,500. With this money he opened another account in his name in the same bank.

"Complainant, in her bill, declared that at least $4,000 of the money withdrawn by her husband from the joint account was her money. She prayed that her husband be ordered to make a full discovery and disclosure with respect thereto, that he be directed to pay her at least $4,000, or that the proportionate interest of the parties in the money deposited be determined and the defendant directed to pay her proportion to her, and that he be declared a trustee for her to the extent of the amount found to be due her.

"The defendant, in his answer and in his testimony, denied absolutely that his wife had ever turned over any of her earnings to him.

"The savings teller at the Mechanics National Bank of Burlington produced the signature card taken when the savings account was originally opened by the defendant. That card bore two printed forms. Upon its face was this statement: 'Below please find duly authorized signatures which you will recognize in payment of funds. The acceptance, by a depositor of the pass book shall be deemed on acceptance of all the rules and conditions therein, and any amendments or additions thereto. The undersigned hereby agrees thereto.' Beneath these words was subscribed the signature and street

address of the defendant, and under his signature and address was written 'or Verna Szychoski, 232 Mott Ave., Burlington, N. J.' Below the latter were the numerals 6-11-41 which the teller said he placed there when the wife's name was added. On the back of the signature card was printed the customary form of agreement for use when depositors wished to record the fact that they had agreed upon a joint tenancy with right of survivorship. This form was not signed by the parties.

"The bank book, originally issued to the defendant, has his name alone at the head of the actual account, but on the outside of the book, after defendant's name, appear the words 'or Verna Szychoski, Added June 11-1941.' Rule 3 of the rules and regulations printed inside the front cover of the bank book reads: 'Money may be withdrawn by the depositor in person or by any other properly identified person having an authorized order on a blank furnished by the Bank—but the Pass Book must, in all cases, accompany the Order unless already in the keeping of the Bank.' The bank book was always in the possession of the defendant and it was produced in court by him. The complainant not only admitted she never had this book in her possession, she testified she knew she could not withdraw any money from the account without presenting it at the bank.

"The assertion of the complainant that she gave all of her earnings to her husband to hold for her was in nowise corroborated. It has been argued for her that the account shows greatly increased deposits from June 11th until the parties separated. This is true, but it was also proven that the defendant purchased a home shortly before his marriage, that shortly after his marriage he purchased a used automobile, and that in the first few years of his married life he satisfied the obligations growing out of these purchases. It was also proven that the defendant's salary grew with the war years and that he received substantial bonuses. His salary in 1940 was $1,167.63; in 1941, $1,399.86; in 1942, $1,574.79; in 1943, $2,002.41; in 1944, $1,854.50; in 1945, $2,703.04; and in 1946, $2,622.57. The complainant suggested that bonuses were paid him even greater than he had testified.

"A striking feature of the instant case is that a brother and a sister of the complainant appeared for the defendant and testified against their sister. It was their testimony that, after she obtained her position in Camden, she spent all or most of her earnings for personal clothing and ornamentation. They corroborated the defendant, testifying the complainant told them that she purchased her clothing with her earnings. They also declared, and the defendant's brother who was often in the home of the parties, testified that the complainant never suggested she was giving any of her earnings to her husband or that she was having them deposited in the bank account. Defendant's brother often made the deposits at the bank.

"The complainant never made a deposit in the bank account and, except in one instance, never withdrew any money therefrom. In March, 1946, she was required to enter a hospital for an operation. Her husband gave her a check on the account for $218.52, which she took to the bank and cashed. This reduced the account to the even sum of $4,500, the amount her husband later withdrew. The balance of her hospital bill and medical expenses were also paid by the defendant.

"With respect to the bank account, I should note the complainant testified that, about two months after her husband opened that account, he brought the signature card home with him and had her sign it. The statement he then made, she testified, was that the bank account was being put in both names 'for the convenience of both.' She added that he suggested she put money in the account to provide for her necessities in the event that she became sick or otherwise came to need money in the future. However, it was the testimony of the defendant that he had the title to his home placed in his name and that of his wife, and had her name added to the bank acount, because he was ill and because he was anticipating the necessity of an operation. I accept his testimony.

"Complainant had not carried the burden she assumed when she charged that she had given her earnings to her husband to hold or to deposit in bank for her. A defendant's

right to have the complainant bear the burden of proof is a substantial right of which the defendant should not be deprived. *Hughes* v. *Atlantic City and S. Railroad Co.* (*Court of Errors and Appeals*), *85 N. J. Law 212; 89 Atl. Rep. 769.* A defendant's right to have the complainant bear the burden of proof warrants a defendant in presuming that no judgment will be passed against him in this court unless the adverse party shows himself entitled to relief under the strict rules of law. *In re McCraven* (*Court of Chancery*), *87 N. J. Eq. 28; 99 Atl. Rep. 619.* Her testimony was in many particulars most unsatisfactory and she was not corroborated by any witness or by any item of the evidence. On the other hand, I was impressed with the apparent truthfulness of the defendant and by his attitude of conciliation toward his wife. He had taken her back twice notwithstanding his feeling that she had left him for another man, and it was quite obvious to me that he was ready to forgive her again if she but indicated an inclination toward a reconciliation.

"Complainant's story that she paid for her daily transportation between Riverside and Camden, for her lunches, for her clothing, and for practically all of her other personal wants out of tips was, to me, incredible. A circumstance which developed in the testimony also indicated the improbability of her testimony. She was forced to admit on cross-examination that, while she was still living with her husband, and at a time when she said she was giving him all of her salary and was receiving gratuities sufficient to meet her expenses, she borrowed $250 from a comparative stranger, a tavern keeper in Camden. Also, if her story be tentatively accepted, it seems to me strange that when she separated from her husband she did not immediately demand the money in the bank account.

"The only issue here was an issue of fact. The preponderance of the evidence is persuasive that the money deposited in the bank account and withdrawn by the husband was his money. This would lead to a dismissal of the complainant's bill. I might say, however, in passing, that there was, in this case, no gift of the husband to the wife *in præsenti* and no

divestment of dominion over the moneys on deposit. *Goc* v. *Goc, 134 N. J. Eq. 61; 33 Atl. Rep. (2d) 870; Rush* v. *Rush, 138 N. J. Eq. 611; 49 Atl. Rep. (2d) 238.*"

*Messrs. Worth & Worth* and *Mr. Charles A. Cohen,* for the appellant.

*Mr. Grover C. Richman,* for the respondent.

PER CURIAM.

The decree will be affirmed, for the reasons expressed in the opinion of Vice-Chancellor Woodruff.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, COLIE, WACHENFELD, EASTWOOD, BURLING, JACOBS, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ. 14.

*For reversal*—None.